UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WORLD TRIATHLON CORPORATION, INC.,

Plaintiff,

vs.                                                        Case No. 8:05-CV-983-T-27EAJ

DAWN SYNDICATED PRODUCTIONS,
TELEPICTURES PRODUCTIONS, WARNER
BROS. ENTERTAINMENT, INC., WARNER
BROS. DOMESTIC TELEVISION
DISTRIBUTION, INC., WMOR-TV COMPANY,

Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendants' Dispositive Motion for Summary Judgment (Dkt. 60), Plaintiff's Opposition (Dkt. 69) and Defendants' Reply to Plaintiff's Opposition (Dkt. 87). Upon consideration, Defendants' motion is **GRANTED**.

Plaintiff initiated this action against Dawn Syndicated Productions, Telepictures Productions, Warner Bros. Entertainment, Inc., Warner Bros. Domestic Television Distribution, Inc., and WMOR-TV Company (collectively "Defendants"), alleging Defendants' use of the term "Ironman" in connection with a reality dating television series infringed on Plaintiff's registered trademarks in violation of state and federal law. Plaintiff asserts claims for federal trademark infringement, false designation of origin, dilution, and Florida common law trademark infringement. (Dkt. 1). Defendants move for summary judgment on all counts of Plaintiff's Complaint. (Dkt. 60).

1

**Summary Judgement Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (*internal citations omitted*). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

**Discussion**

I.    **Plaintiff's claims for Federal Trademark Infringement, False Designation of Origin, and Florida Common Law Trademark Infringement**

Trademarks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods ... from those manufactured or sold by others and to indicate

the source of the goods." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1216-1217 (11th Cir. 2000) (citing 15 U.S.C. § 1127).   To prevail on a trademark infringement claim pursuant to the Lanham Act, a plaintiff must show (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion. *Carnival Brand Seafood Company v. Carnival Brands, Inc.*, 187 F.3d 1307, 1309 (11th Cir. 1999).   Likelihood of confusion is also an essential element of Plaintiff's claims for false designation of origin and trademark infringement under Florida common law. *See* 15 U.S.C. § 1125(a); *Carnival Corp. v. Seaescape Casino Cruises*, 74 F. Supp. 2d 1261, 1264, n. 2 (S.D. Fla. 1999) ("analysis under the Lanham Act for trademark infringement also applies to claim of trademark infringement and unfair competition under Florida common law").

A.   *Priority of the Mark*

Plaintiff is in the business of organizing and promoting triathlon competitions worldwide including the Ironman Triathlon World Championship. (Fertic Aff., ¶ 3). Plaintiff first used the Ironman mark in 1978 when it conducted the first Triathlon World Championship in Hawaii. (Fertic Aff., ¶ 4).   The Ironman triathlon competition is comprised of a 2.4 mile swim, 112 mile bicycle race and approximately 26.2 mile run. *Id.*   Since 1978, the race has gained mainstream media attention through articles in Sports Illustrated, ABC broadcasts, NBC broadcasts, and ESPN specials. (Fertic, ¶¶ 5-8). Since 1995, over 41 million viewers have seen the Ironman Traithlon on NBC. *Id.*

Plaintiff produces television broadcasts and sells DVDs of the triathlon productions. (Fertic Aff., ¶ 10).   The television broadcasts include coverage of the triathlon competition and human interest stories concerning the individual athletes, their extraordinary athletic efforts, and their determination to win. (Fertic Aff., ¶ 11)

Plaintiff owns the rights to use several registered Ironman marks for the presentation of

3

triathlon events and exercise-related products, including but not limited to "IRONMAN" (Reg. No. 1,353,313), "IRONMAN TRIATHLON" (Reg. No., 1,226,245), and "IRONMAN TRIATHLON WORLD CHAMPIONSHIP" (Reg. No. 1,462,281) for the presentation of athletic contests consisting of running, swimming, and biking; "IRONMAN TRIATHLON" (Reg. No. 1,705,114) for clothing related to running, biking and swimming; and "IRONMAN TRIATHLON" (Reg. No. 2,356,707) for sports bags, back packs, and other related tote bag products. (Fertic Aff., ¶ 14). Plaintiff also owns the rights to use "IRONMAN PRODUCTIONS" (Reg. Nos. 2908844 and 2845630) for pre-recorded DVDS videotapes featuring race events involving swimming, biking, running and training, as well as television film and video production services featuring events related to triathlons. *Id.*

Plaintiff's trademark registrations are *prima facie* evidence of the validity of the registered marks, Plaintiff's ownership of the marks, and Plaintiff's exclusive right to use the registered marks in commerce. 15 U.S.C. § 1115(a). Additionally, many of Plaintiff's Ironman marks have been deemed "incontestable" by the Patent & Trademark Office.[1] "Once a mark has become 'incontestable,' its validity is presumed, subject to certain enumerated defenses" which Defendants have not raised in this case. *See Dieter v. B&H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 328 (11th Cir. 1989) (citing 15 U.S.C. § 1065).

Contrary to Defendants' assertion, Plaintiff's agreement with Marvel Entertainment, which

---

[1] The incontestability provisions of the Lanham Act were designed to provide a means for a trademark holder to "quiet title in the ownership of his mark." *Park 'N Fly v. Dollar Park and Fly Inc.*, 469 U.S. 189, 198 (1985). A mark is "incontestable" if it has been registered for five years with the Patent & Trademark Office, the holder of the mark files an affidavit in accordance with 15 U.S.C. 1065(3) and the Patent & Trademark Office declares the mark "incontestable." *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1336 (11th Cir. 1999).

4

holds the rights to the "Iron Man" comic character, and its agreement with John Balik and Stephanie Bier, who hold the rights to Iron Man Magazine, do not prohibit Plaintiff from protecting itself from the alleged infringing conduct by Defendants. Neither agreement calls into question the validity of Plaintiff's marks. Nor do the agreements extend rights to Defendants to use the Ironman mark. Accordingly, Plaintiff has sufficiently demonstrated that its marks are valid and that its right to the Ironman mark is superior to any right held by Defendants.

      B.    *Likelihood of Confusion*

The Eleventh Circuit has set forth seven factors that should be considered when determining whether there is a likelihood of confusion: (1) type of mark; (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion. *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *Dieter*, 880 F.2d at 326. "Of these factors, the type of mark and evidence of actual confusion are the most important in this circuit." *Dieter*, 880 F.2d at 326 (citations omitted). There are, however, no hard and fast rules as to how much evidence of confusion is enough. Rather, "when looking at the evidence the reviewing court must take into consideration the circumstances surrounding each particular case." *Id*. at 326, n. 3 (citations omitted).

### *Type of Mark*

Trademark law recognizes four categories of marks, based on levels of distinctiveness. From least distinctive to most distinctive, these categories are: "(1) generic – marks that suggest the basic nature of a product or service; (2) descriptive – marks that identify the characteristic or quality of a product or service; (3) suggestive – marks that suggest characteristics of the product or service and

5

require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful – marks that bear no relationship to the product or service . . ." *See Gift of Learning Foundation, Inc. v. TGC, Inc.*, 329 F.3d 792, 797-98 (11th Cir. 2003) (citations omitted).

Suggestive and arbitrary marks are "inherently distinctive" and are therefore afforded greatest protection. A descriptive mark, which is not inherently distinctive, is protected only if the mark has acquired secondary meaning. *Id.* "Secondary meaning is the connection in the consumer's mind between the mark and the provider of the product or service." *See Deltona Transformer Corp. v. Wal Mark Stores, Inc.*, 115 F. Supp. 2d 1361, 1366 (M.D. Fla. 1999).

The "incontestable" status of a mark is a factor to be taken into consideration when determining the strength of a mark. *Dieter*, 880 F.2d at 329. Many of Plaintiff's Ironman marks have been deemed "incontestable" by the Patent & Trademark Office. The marks are therefore presumed to be "at least descriptive with secondary meaning, and therefore [ ] relatively strong mark[s]." *Dieter*, 880 F.2d at 329. Based upon their "incontestable" status, Plaintiff's marks are presumptively strong. *See University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1545 (11th Cir. 1985) (inherently descriptive marks are characterized as "strong"). "Strong marks are given strong protection over a wide range of related products and services." *Turner Greenberg Assoc., Inc. v. C & C Imports. Inc.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla.2004) (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983)).

However, also important in gauging the strength of the mark is the degree to which third parties make use of the mark. *Frehling*, 192 F.3d at 1336. Third-party use of a mark must be considered in assessing the strength of all marks, even "incontestable" marks. *Id.*; *see also HBP, Inc. v. American Marine Holdings, Inc.*, 290 F. Supp. 2d. 1320, 1329 (M.D. Fla. 2003) (incontestability

6

is the doctrine that a registered trademark is presumed to be distinctive, which is the strongest type of mark, but this does not mean that a mark's strength cannot be attacked) (citations omitted). Extensive third party use of the mark, or a term used in the trademark, weakens the strength of the mark despite its "incontestable" status. *See e.g. Carnival*, 74 F. Supp. 2d at 1266 (evidence of numerous third-party registrations for marks including the term "fun" in the travel and entertainment industries weakens the strength of the "Fun Ship" mark); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 505 (5th Cir. 1979) (wide use of mark "World" results in little likelihood of confusion); *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 448 (5th Cir. 1973) (common word "Holiday" is of weak trademark significance); *Michael Caruso & Co. v. Estefan Enter., Inc.*, 994 F. Supp. 1454, 1459 (S.D. Fla. 1998) (defendant's evidence of extensive third-party use of the term "bongo" renders it unlikely that the mark will have strong trademark significance), *aff'd*, 166 F.3d 353 (11th Cir. 1998).

Defendants have presented evidence demonstrating that "Ironman" has been used within the world of sports by numerous third parties, including Iron Man Magazine, Ironman Football League, Ironman lifeguard competitions held in Australia and the United States, and multiple "Ironman Awards," given by colleges, the Arena Football League, the U.S. Army, and the InterContinental Hotels Group. (Dkts. 62, 64; Exs. 10, 56, 57, 58, 59, 60, 63, 64, 65). Additionally, because "Iron man" is a commonly used English term meaning "a man of unusual physical endurance," the term is commonly used in sports journalism to describe an athlete's physical durability (Dkt. 63, Exs. 25 - 48) and is also used outside the world of sports, such as the "Iron Man" comic book character, Ironman Ministries, a nationwide program of men's support ministries, and the "Iron Man Museum," a collection of artifacts and photographs in Sunnyvale, California (Dkts. 63, 64; Exs. 67, 68, 71, 84,

85).[2] A mark incorporating a common English word is inherently weaker than a mark consisting of fanciful and fictitious terms. *See Michael Caruso*, 994 F. Supp. at 1458 ("courts should not grant the holder of a mark that consists of a common English word a monopoly on that term outside the user's field").

Therefore, despite its "incontestable" status, this Court concludes that because Plaintiff's mark consists of a common English word that is regularly used by third parties within the sports market, Plaintiff's mark does not have strong trademark significance outside the use to which Plaintiff has already put its mark, namely, for purposes of this lawsuit, its use in connection with triathlon broadcasts. *See Carnival*, 74 F. Supp. 2d at 1266 (holding the "Fun Ship" was a weak mark despite "incontestable" status); *HBP*, 290 F. Supp. 2d at 1329 ("incontestablitiy is simply one piece of the overall determination of a mark's strength").

### *Similarity of the Marks*

Another factor increasing the likelihood of confusion is a high degree of similarity between the marks. "In determining whether the parties' marks are similar, the Court must compare the marks' appearances, sounds, and meanings, as well as the manner in which the marks are used." *Frehling*, 192 F.3d at 1337 (citations omitted). The Court must examine the marks in their entirety, not merely their similar elements or dominant features. *Id.*

Nothing about Plaintiff's and Defendants' marks appear similar. (compare Dkt. 62, Ex. 2

---

[2] In the *Random House Unabridged Dictionary* (2nd ed. 1993), "iron man" is defined as "a person, as a worker or athlete, of great physical endurance who can be depended upon to perform a given task or job tirelessly." The *Oxford English Online Dictionary*, which provides a very similar definition ("a powerful athlete, esp. one who excels in endurance events") illustrates that the term "iron man" was used as early as 1952 by the New York Times to describe an athlete who excels in endurance events. The fact that Defendants used the single term "Ironman" (as opposed to "Iron man") during the elimiDATE episodes is not significant, as the single term "Ironman" is used extensively by third parties in the sports market as well. (*See e.g.*, Dkt. 64, Exs. 56, 57, 58, 59, 60, 62).

and Dkt. 75, Exs. 3, 4 with Dkt. 62, Ex. 19 and Dkt. 75, Ex. 14).  Defendant used the term "Ironman" to describe the five day elimiDATE series aired in May 2005.  The mark appeared on the bottom-left corner of the screen as "elimiDATE Ironman Challenge" or "elimiDATE Ironman."  "Ironman" appeared in grey capital block letters.[3]  In contrast, the vast majority of Plaintiff's marks depict the term "Ironman" in blue lettering with an red-orange "m" and a distinctive red-orange circle over the "m," giving the artistic appearance of a man within the word "Ironman."  The word "Ironman" is outlined in white and appears in all capitals.  In most all of Plaintiff's television broadcasts, the term "Ironman" is used in conjunction with the phrase "Triathlon World Championship," which appears in smaller white letters underneath the "Ironman" mark.[4]

The only similarity the two marks share is the parties' use of the term "Ironman" in the title of their broadcasts.  In all other respects, Defendants' use of the term neither looks nor sounds similar to Plaintiff's marks.  The mere fact that both marks incorporate a form of the common term "Ironman" does not render the marks sufficiently similar to establish likelihood of confusion.  *See e.g., Freedom Savings & Loan Ass'n v. Way*, 757 F.2d 1176, 1183 (11th Cir. 1985) (holding "Freedom Realty" and "Freedom Savings and Loan" are not sufficiently similar); *Sun Banks of Florida, Inc. v. Sun Federal Sav. And Loan Ass'n,* 651 F.2d 311, 316 (5th Cir. 1981) ("Sun Federal and Savings Loan Association" not confusingly similar to "Sun Banks"); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 260 (5th Cir. 1980) ("Domino's Pizza" not similar to "Domino sugar"); *Bell*

---

[3] In the promos for the elimiDATE series the words "elimiDATE Ironman Challenge" appeared in a yellow/orange color.

[4] While Plaintiff points out that two of its marks, "Ironman" used for athletic clothing and "Ironman Productions," do not include the logo's descriptive characteristics or include the words "Triathlon" or "World Championship," Plaintiff fails to demonstrate that these two marks are similar to Defendants' use of the term "Ironman" in its "elimiDATE Ironman Challenge."

*Laboratories, Inc. v. Colonial Prods., Inc.,* 644 F. Supp. 542, 547 (S.D. Fla.1986) ("Final flip" and

"Flip" marks for same product are "ultimately different and different sounding"); *In re Hearst Corp.,*

982 F.2d 493, 494 (Fed. Cir. 1992) ("Varga girl" and "Vargas" are "sufficiently different in sound,

appearance, connotation, and commercial impression, to negate likelihood of confusion"); *Mr. Hero*

*Sandwich Sys., Inc. v. Roman Meal Co.,* 781 F.2d 884, 888 (Fed. Cir. 1986) ("Romanburger" and

"Roman" marks for food products "are not similar in appearance"); *Little Caesar Enterprises v.*

*Pizza Caesar, Inc.,* 834 F.2d 568, 571 ("Pizza Caesar U.S.A." not similar to "Little Caesar's");

*Conde Nast Pubs., Inc. v. Miss. Quality, Inc.,* 507 F.2d 1404, 1407 (CCPA 1975) ("Country Vogues"

and "Vogue" publications "do not look or sound alike"); *Pacquin-Lester Co. v. Charmaceuticals,*

*Inc.,* 484 F.2d 1384 (CCPA 1973) ("Silk 'n' Satin" beauty and bath lotion and oil not similar to

"Silk" face cream).

Moreover, Defendants repeatedly placed its "elimiDATE" mark immediately adjacent to their

use of "Ironman," thereby further reducing the possibility of consumer confusion. *See Security*

*Center v. First Nat'l Security Center*, 750 F.2d 1295, 1302 (5th Cir. 1985) (noting that any potential

confusion around "Security Centers" would be minimized by defendants' use of "First National" in

its mark). Accordingly, the two marks lack sufficient similarity and this factor weighs in favor of

Defendants.

<u>Similarity of Products or Services</u>

The greater the similarity between the parties' products or services, the greater the likelihood

of confusion between their marks. *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 756 F.2d 1502 (11th Cir.

1985). Here, however, there can be no doubt that the elimiDATE program provides a materially

different broadcast than Plaintiff's broadcasts of the Ironman triathlons. The elimiDate Ironman

Case 8:05-cv-00983-JDW-EAJ   Document 93   Filed 09/28/07   Page 11 of 18 PageID 2753

Challenge included five thirty minute reality shows in which a single man was sent on a date with four women. The man narrowed the field of four women down to one. The winners from each day were invited on a final date, during which the man continued to eliminate women until there was only one woman remaining. None of the dates involved triathlons or running, biking or swimming competitions. (Dkt. 75, Comp. Ex. 14). In stark contrast, the Ironman triathlon broadcasts involve endurance competitions combining running, biking and swimming. The broadcasts are lengthy and unlike the reality dating series, the triathlon broadcasts are inspirational and include dramatic footage of the race, as well as human interest stories concerning the individual participants. (Dkt. 75, Exs. 3, 4).

In order to establish similarity, consumers must be likely to think that Defendants' program came from the same source as Plaintiff's program or was sponsored or approved by Plaintiff. *See E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir.1985). The mere fact that both programs involve a type of competition does not itself establish proximity of the parties' goods for the purposes of likelihood of confusion. *See Amstar*, 615 F.2d at 261 ("Domino" sugar and "Domino" pizza not sufficiently similar despite both being food products). When considering whether the goods or services are similar, the critical inquiry is whether the goods are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods, not whether or not the purchasing public can readily distinguish between the products of the respective parties. *Frehling*, 192 F.3d at 1338 (citing *E. Remy Martin*, 756 F.2d at 1530). Considering the nature of the Defendants' broadcast, there is no likelihood that any reasonable consumer could believe that the elimiDATE Ironman Challenge was related to the Ironman triathlon competitions. Accordingly, this factor weighs in favor of Defendants.

11

### *Similarity of Viewers and Advertising Methods*

Dissimilarities between customers and advertising methods lessons the possibility of confusion, mistake or deception. *See John H. Harland Co.*, 711 F.2d at 975. "This factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling*, 192 F.3d at 1339. Plaintiff contends this factor weighs in its favor because both parties marketed their programs to "television viewers" with hopes of receiving "healthy Nielsen Ratings to attract advertisers." Plaintiff's argument is overly broad and unpersuasive.

ElimiDATE marketed its program to primarily women, ages 18 to 49. (Rosenblum Depo, pp. 14-15). Plaintiff has presented no evidence that it is competing with Defendants for the same viewers or customers. To the contrary, Plaintiff's viewer base consists mostly of sports enthusiasts, many of whom enjoy participating in triathlons themselves. According to Plaintiff's own literature, triathlon participants are generally well educated, white collar males with a higher-than-average income. (Dkt. 64, Exs. 72-74). According to Plaintiff, its Ironman brand appeals to "active 25 to 55 year olds." *Id.*

While there may have been some television viewers who watched both Ironman Triathlons and the elimiDATE Ironman Challenge, there is no evidence supporting Plaintiff's contention that the two customer classes are the same. Similarly, there is very little overlap in the parties' advertising budgets and chosen marketing channels. Plaintiff expends a large amount of money in advertising on television, both network and cable channels, and print media outlets, as well as on the internet via its websites, www.ironman.com, www.ironmanlive.com, and www.ironmanstor.com. (Fertic Aff., ¶¶ 20, 22). Plaintiff also licenses its mark through agreements with many companies, such as Ford, Izusu, Dell, Subaru, Foster Grant, and Timex, which according to Plaintiff, resulted

in sales exceeding $1 billion during the years 2001 through 2005. (Fertic Aff., ¶ 15). In contrast, Defendants' advertising of the elimiDATE Ironman Challenge series was limited to the elimiDATE website and promotional spots aired during elimiDATE episodes. (Decker Depo., p. 103). Thus, the parties' viewer bases and advertising methods share virtually no similarities. Overall, this factor therefore weighs in Defendants' favor.

### *Defendants' Intent*

"Although objective factors are most important in assessing the likelihood of confusion between two marks, courts also examine the defendant's subjective intent. *HBP*, 290 F. Supp. 2d at 1337 (citing *John H. Harland*, 711 F.2d at 977). The evidence demonstrates that two of Defendants' employees were aware that Ironman triathlons existed when Defendants were conducting "brain-storming" meetings in an attempt to name the relevant elimiDATE series. (Pankowski Depo, p. 63; Mullikan-Bates Depo., p. 26).[5] This evidence is insufficient, however, to demonstrate bad faith on the part of Defendants. *See Michael Caruso*, 994 F. Supp. at 1462 (mere prior knowledge of a senior user's trademark does not necessarily give rise to an inference of bad faith).

A defendant acts in bad faith when it adopts "its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Id.*; *see also Amstar*, 615 F.2d at 263 (bad faith normally involves efforts by a party to "pass off" its product as related to another). Plaintiff fails to present any evidence suggesting that Defendants chose the Ironman name with the intention of capitalizing on the goodwill Plaintiff had established

---

[5] Ms. Millikan-Bates testified that when the name "Ironman" was suggested for the elimiDATE series, she initially thought of the Ironman Triathlon. However, she clarified that she thought of the Ironman Triathlon because the name "Ironman" suggested endurance.

in its mark. To the contrary, the evidence suggests that the name was chosen because of its common English meaning and because in a comedic fashion the term depicts the type of competitor, someone with physical endurance, who could succeed in dating multiple women over a five day period.

### Actual Confusion

"The law is well settled in [the Eleventh Circuit] that evidence of actual confusion between trademarks is not necessary to a finding of likelihood of confusion." *E. Remy Martin*, 756 F.2d at 1529. However, actual confusion remains "the best [ ] evidence" of likelihood of confusion. *Id*. Plaintiff has presented no competent evidence of actual consumer confusion. Neither has Plaintiff presented any survey evidence indicating consumer confusion is likely. The testimony of Plaintiff's *employee*, Carolyn Richards, does not create an issue of fact in this regard.

In conclusion, all seven factors weigh in favor of Defendants. In light of the totality of the circumstances related to the parties' products and their commercial activities, there simply is no likelihood of customer confusion as to origin or sponsorship of the elimiDATE Ironman Challenge. After viewing the evidence in the light most favorable to Plaintiff, this Court concludes that an inference of possible confusion cannot reasonably be drawn from the record.

While the issue of likelihood of confusion is generally a question of fact, this does not preclude the entry of summary judgment in a trademark infringement case. *See Universal Money Centers, Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1530 n. 2 (10th Cir.1994) (affirming summary judgment for defendant) (citations omitted); *Kazmaier v. Wooten,* 761 F.2d 46, 48 (1st Cir.1985) (affirming summary judgment on trade name infringement claim; "[w]hile infringement and unfair competition cases often present factual issues that render summary judgment inappropriate, this is not invariably so"); *Door Systems, Inc. v. Pro-Line Door Systems, Inc.,* 83 F.3d

14

169, 171 (7th Cir.1996) (affirming summary judgment finding no infringement of mark "door systems"); *Murray v. Cable Nat'l Broadcasting Co.,* 86 F.3d 858, 860 (9th Cir.1996) (the factual nature of the likelihood of confusion issue does not preclude the district court from determining likelihood of confusion as a matter of law and granting summary judgment).

Where, as here, the evidence is so one-sided that there can be no doubt about whether customer confusion is likely, summary judgment is proper. *See Warner Bros. v. American Broadcasting, Cos.,* 720 F.2d 231, 246 (2d Cir. 1983) ("courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determinations whether there is a likelihood of confusion as to source"). Accordingly, Defendants' motion for summary judgment on Plaintiff's claims for federal trademark infringement, false designation of origin, and Florida common law trademark infringement is GRANTED.

## II.   **Dilution of Famous Mark**

Under the Federal Trademark Dilution Act (the "FTDA"), a plaintiff must prove that (1) its mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer actually diluted the mark; and (4) the defendant's use is commercial and in commerce. 15 U.S.C. § 1125(c). Under the FTDA, a famous mark "must have a degree of distinctiveness and strength beyond that needed to serve as a trademark; it must be 'truly prominent and renowned.'" *HBP*, 290 F. Supp. 2d at 1338 (citations omitted). The nonexclusive list of factors that a court may consider to determine whether a plaintiff's mark is famous includes: (1) distinctiveness; (2) duration and extent of use; (3) the duration and extent of advertising; (4) geographical extent; (5) channels of trade; (6) the degree of recognition of mark; (7) the nature and extent of the use of the same or similar marks by third parties; and (8) whether the mark is registered. 15 U.S.C. § 1125(c)(1).

15

"Incontestability alone is not sufficient to render a mark 'famous' for dilution purposes." *HPB*, 290 F. Supp. 2d at 1338.

The Trademark Dilution Revision Act (the "TDRA"), which amended the FTDA effective October 6, 2006, also requires a plaintiff to prove that its mark is famous. However, under the TDRA, a plaintiff need not show actual dilution. Rather, an owner of a famous mark can prevail on a dilution claim if the owner shows that its mark is famous and demonstrates the *likelihood* of dilution. 15 U.S.C. § 1125(c)(1) (2006).

It is unnecessary to determine whether the TDRA or the FTDA applies to Plaintiff's claim because this Court finds that Defendants are entitled to summary judgment under both acts. First, it is questionable whether Plaintiff can establish that its use of the term "Ironman" is famous for purposes of demonstrating that Defendants' use of the term diluted Plaintiff's Ironman marks. Plaintiff's Ironman logo, namely its use of the word "Ironman," combined with the logo's other distinctive characteristics, such as the blue letters, orange "m" and orange circle over the "m," may meet the standards required of a "famous" mark. However, Plaintiff does not contend Defendant's infringed upon the logo.[6] As explained *supra*, Defendants' use of the term "Ironman" was neither similar in sound or sight to Plaintiff's "Ironman" logo. Defendants used a different font, color, and letter style and Defendants used the term in connection with other words, such as "elimiDATE" and "Challenge." The record evidence establishes that Defendants, like many third parties, used the term "Ironman" in accordance with its general meaning as an English word, namely to describe in a comedic fashion a characteristic of the male contestant who was the subject of the elimiDATE dating series. Moreover, the record evidence demonstrating extensive third party use of the term "Ironman"

---

[6] Plaintiff's reliance on the 1998 verdict in the matter of *World Triathlon Corp. v. Textron, Inc., d/b/a Speidel*, Case No.: 8:96-CV-1635-T-27TBM, as conclusive evidence that its Ironman marks are "famous" is misplaced. The *Textron* matter was limited to the defendant's use of the Ironman logo. In that case, the defendant had reproduced the identical logo on a competing product.

weighs in favor of finding that Plaintiff's mark is not "famous" for purposes of a dilution claim against Defendants in this context. *See HPB*, 290 F. Supp. 2d at 1338.

Assuming *arguendo,* however, that Plaintiff could establish that its use of the term "Ironman" is famous, summary judgment on Plaintiff's dilution claim is proper because Plaintiff cannot establish either actual dilution or the likelihood of dilution. Plaintiff has not introduced any evidence demonstrating that its customers and potential customers have, as a result of Defendants' use of the term "Ironman" during its five day reality show series, formed any different impression of Plaintiff's products. Likewise, for the reasons discussed in connection with this Court's determination that there is no likelihood of confusion between the two marks, Plaintiff has failed to demonstrate that there is a likelihood that a consumer would form a different impression of Plaintiff's products due to Defendants' limited use of the word "Ironman."

Accordingly, Plaintiff has failed to present a genuine issue of material fact on actual dilution or likelihood of dilution. *See Carnival Corp.*, 74 F. Supp.2d at 1271 (plaintiff's dilution claim failed where plaintiff's "Fun Ship" mark lacked distinctiveness and plaintiff had not shown that defendant's use of the slogan about a "Ship Full of Fun!" had decreased plaintiff's mark's commercial value); *see also Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1029 (2d Cir. 1989) (holding that automobile manufacturer's use of mark "Lexus," for its new luxury automobile, did not dilute mark "Lexis" used by company providing computerized legal research service; marks were not substantially similar, products did not compete with each other, and "Lexis" mark was not strong outside of market for company's services). Defendants' motion for summary judgment on Plaintiff's dilution claim is therefore GRANTED. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1)      Defendants' Dispositive Motion for Summary Judgment (Dkt. 60) is GRANTED.

17

2)      The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff.

3)      The Clerk is further ordered to close this case.

**DONE AND ORDERED** in chambers this ___*28*<sup>th</sup>___ day of September, 2007.


**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record